**SIGNED this 27th day of October, 2006.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# United States Bankruptcy Court

### Western District of Texas
### San Antonio Division

| | |
|---|---|
| JESSICA MARIE GARCIA, JESUS ANGEL GARCIA & SANTO GARCIA<br><br>*PETITIONING CREDITORS*<br><br>V.<br><br>RAUL SERGIO CANTU, M.D. A/K/A RAUL SERGIO CANTU-WILLMAN<br><br>*INVOLUNTARY DEBTOR* | BANKR. CASE NO.<br><br>06-50950-C<br><br>INVOLUNTARY CHAPTER 7 |

## DECISION ON MOTION TO DETERMINE SUFFICIENCY OF SERVICE OF PROCESS

This is an involuntary Chapter 7 filed by judgment creditors of a local physician. The putative debtor (hereinafter "Debtor") asserts that he has not been properly served. For the reasons discussed below, the Court holds that Debtor has been properly served under Bankruptcy Rules 1010 and 7004(b). Pursuant thereto, the time for filing an answer to this involuntary petition will be held to run from the date of entry of an order consistent with this opinion.

**Facts**

Jessica Marie Garcia, Jesus Angel Garcia and Santos Garcia ("Petitioning Creditors") were awarded damages of approximately $500,000 each in a default judgment arising from a wrongful death and survivorship action (a total of approximately $1.5 million) against Raul Sergio Cantu, M.D., for the negligent medical treatment of Petitioning Creditors' mother, Mrs. Norma Garcia. The judgment is now final and nonappealable.

Mrs. Norma Garcia became a patient of Dr. Cantu in late January 2003. According to the Texas Medical Board, Dr. Cantu had been engaged in the practice of medicine in Texas for over thirty years, and held privileges at several hospitals in San Antonio. Dr. Cantu performed a laparoscopic cholecystectomy (removal of the gall bladder) on Mrs. Garcia. Unfortunately, Mrs. Garcia died shortly afterwards. Not long thereafter (on April 11, 2003), an attorney retained in connection with Mrs. Garcia's death sent a letter to Dr. Cantu, requesting information regarding her treatment. The letter was in fact received by Dr. Cantu on April 15, 2003, as confirmed by the return receipt, at his then practice address. In May 2003, the attorney initiated a lawsuit on behalf of the relatives of Mrs. Garcia (the persons who are now the petitioning creditors in this action), seeking damages for Dr. Cantu's alleged negligence in his treatment of Mrs. Garcia. Dr. Cantu claims that he then left town for Monterey, Mexico, abandoning his over thirty-year old medical practice. The lawsuit, meanwhile, remained on file in San Antonio. Finally, on December 21, 2004, the relatives took their default judgment against Dr. Cantu in Cause No. 2003-CI-08000 in the 285th Judicial District Court of Bexar County, Texas.

Dr. Cantu somehow learned about the default judgment because on January 25, 2005 – a mere 34 days after entry of the default – a letter from Dr. Cantu arrived at the Bexar County

-2-

courthouse. This letter, containing Dr. Cantu's *pro se* motion for new trial, was postmarked in San Antonio and bore a San Antonio return address.  The motion was denied.

In an attempt to collect upon the judgment, the relatives initiated this involuntary Chapter 7 petition against Dr. Cantu.  As petitioning creditors, they sought to accomplish service of process on Dr. Cantu, the putative debtor, by mailing a true copy of the petition and summons to Dr. Cantu at two addresses, to comply with the requirements of Bankruptcy Rules 1010 and 7004(b).  The first address, 11103 San Pedro, Apt. 244, San Antonio, TX 78216 ("San Pedro Address"), was, according to the Petitioning Creditors, the Debtor's residence, as confirmed by the address given on Dr. Cantu's Texas driver's license.  That license was issued in 2002 and is valid until 2007.

The second address to which the summons was mailed, 8546 Broadway, Suite 235, San Antonio, TX 78217 ("Broadway Address"), is, according to the records of the Texas Secretary of State, the address of two business entities, both listing "Raul S. Cantu" as President.  This is also the address that Dr. Cantu provided to the Texas Medical Board as his "Primary Practice Site" and "Mailing Address" for his still-active Texas medical license.

Both attempts at service were accomplished by certified mail, return receipt requested, and both were addressed to Raul S. Cantu.  Debtor alleged in his motion to dismiss that it was in fact Dr. Cantu's son, Raul S. Cantu, Jr. who received and opened the mailing to one of the two addresses. No evidence was proffered to support this allegation, however.  The return receipt is simply signed "Raul Cantu," with no further designation of either profession or family position.

**Procedural Posture and Burdens of Proof**

This involuntary petition was filed on May 30, 2006.  The summons was issued on the same day.  The Petitioning Creditors then perfected service of the summons by mail, as detailed above.

-3-

They filed a certificate of service on June 14, 2006.  On June 29, 2006, the Debtor filed his motion to dismiss the petition for lack of personal jurisdiction.[1]  A hearing on this motion was held on August 1, 2006, and evidence was presented by both parties.  The court ruled on the record at the conclusion of the hearing, denying the motion to dismiss for lack of personal jurisdiction, but observing that service of process appeared to be problematic.  An order was entered on August 4, 2006, denying the motion to dismiss.  The order did not specifically address (one way or the other) the adequacy of service of process.  The Petitioning Creditors, however, in an apparent abundance of caution (engendered by the court's comments on the record), filed this motion, entitled "Petitioning Creditors' Motion to Determine Sufficiency of Process or, in the Alternative, for Alternative Service, Pursuant to Rule 7004 of the Bankruptcy Rules of Procedure."

**Analysis**

**A.  Characterizing the Pleading Before the Court**.

At the outset, we are confronted with a procedural problem. The Court denied the Debtor's motion to dismiss. The prevailing party on that motion then filed the instant motion. This latest motion first asks the court to confirm that service of process already accomplished in this case is adequate, or alternatively to grant permission to pursue alternative service.  The order denying the defendant's motion to dismiss did not address this question one way or another.

An initial question presented is whether the issue of adequacy of service of process is even properly before the court. If it is not, then the service already accomplished to date by the Petitioning Creditor is necessarily sufficient as a matter of law, because the failure to raise sufficiency of service in the defendant's initial responsive pleading means that any objection to adequacy of service is

---

[1] The title of the motion filed by Debtor reads "Motion to Dismiss Involuntary Case Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(2) for Lack of Jurisdiction over the Person."

deemed waived, per the express terms of Rule 12. If, on the other hand, it *was* raised, then the next question is whether the court's order denying the motion constitutes a *ruling* on the question of sufficiency of service, such that it is unnecessary to further visit the question. Finally, if the court has *not* yet ruled on sufficiency of service, a third question is whether it is either necessary or appropriate to re-open the record to take evidence regarding sufficiency of service (the alternative being to rule on the record already made).

The question whether the sufficiency of service is properly before the court is one of waiver. Rule 12(b)(2) permits a defendant, in its initial responsive pleading, to challenge personal jurisdiction. The debtor's motion to dismiss in this case clearly did just that. Did that motion also constitute a challenge to sufficiency of service? If it did not, then any such challenge is waived. *See* FED.R.CIV.P. 12(h)(1).[2]

There are two ways in which a challenge could be said to have been raised. One, of course, is explicitly. The other is implicitly, as an aspect of the challenge to personal jurisdiction. Proper service of process has been said to be a prerequisite to a court's exercising personal jurisdiction over a party. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 716 n.6 (1982). The primary function of service of process is to provide notice to a party that a judicial action is about to take place. 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1063 (3rd ed. 2002) (hereinafter *Wright & Miller*). Thus, it could be maintained that adequacy of

---

[2] The rule states as follows:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived if (A) omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

*Id.*

service is subsumed under a court's consideration of personal jurisdiction. Here, of course, the court denied the debtor's motion to dismiss on this ground. Thus, it could be argued that this ruling also constituted a ruling on sufficiency of service as well.

However, Rule 12(b)(5) provides, as a separate and explicit ground for dismissal, insufficiency of service, independent of the lack of personal jurisdiction ground specified in Rule 12(b)(2). *See* FED.R.CIV.P. 12(b)(2), (5). And subsection (h)(1) of the Rule makes explicit and separate reference to insufficiency of service of process as a specific challenge that must be raised, failing which it will be deemed waived. *See* FED.R.CIV.P. 12(h)(1). The explicit reference to the (b)(5) challenge in subsection (h)(1) strongly indicates that the Rule's drafters did not believe that challenges to sufficiency of service were subsumed under a challenge to personal jurisdiction. Instead, the drafters seem to have intended that a challenged to sufficiency of service of process be raised as a separate and distinct ground for dismissal, or be waived. Thus, the fact that the court here denied the Debtor's challenge to personal jurisdiction under subsection (b)(2) should not be construed as a *sub rosa* ruling on the Debtor's challenge to sufficiency of service of process.

Thus, any challenge to sufficiency of process that the Debtor might have will be deemed waived unless the Debtor raised it in his motion to dismiss. In reviewing that motion to dismiss, it is evident that the Debtor did not *expressly* raise, as an additional grounds for dismissal of the petition, insufficiency of service. Certainly, the motion made no explicit reference to Rule 12(b)(5). However, the body of the motion *did* at least include allegations that tended to raise a concern regarding whether the Debtor had in fact actually been served at the locations indicated, and further suggested that neither of those addresses qualified as places where the Debtor could legitimately

have been served. *See* Motion to Dismiss (Docket No. 5), at ¶¶ 3-5.[3] As a general rule, a pleading is to be evaluated on its substance rather than its form. *See Wright & Miller*, § 1355 (3d. ed. 2004).[4] While admittedly inartful, the Debtor's Motion does at least generally contest whether service at these addresses can count as proper service of process. That is sufficient for the court to conclude that the Debtor did not waive an objection to adequacy of service. *Id.*

However, precisely because the court has concluded that the Debtor *did* raise a Rule 12(b)(5) objection in his motion to dismiss, the court also necessarily concludes that the question of sufficiency of service has already been *litigated* at the evidentiary hearing that was conducted on the motion to dismiss. Thus, whether service was in fact sufficient must necessarily turn on the evidence taken at that hearing. That hearing was the Debtor's opportunity to make his best case for proving insufficiency of process. Whatever record the Debtor made at that hearing with respect to this issue is the record with which the Debtor must now live. If he failed to do so, then that challenge should now be explicitly denied. It is unnecessary (and indeed inappropriate) to afford the Debtor with a new opportunity to present evidence using, of all things, the Petitioning Creditors' motion

---

[3] The relevant portion of the motion reads as follows:

> 3. First, Raul Sergio Cantu, M.D. is not domiciled in Bexar County, nor does he receive mail at the address provided in the Involuntary Petition, which is the same address which service by mail was attempted on Raul Sergio Cantu, M.D.
> 4. Raul S. Cantu, a son of Raul S. Cantu, M.D., docs receive mail at the address provided in the involuntary bankruptcy, and did inadvertently open the Summons addressed, unbeknownst to him, to his father.
> 5. Raul Sergio Cantu, M.D. would state that he is, and has been for the last four (4) years, a resident of Mexico. Therefore, this Bankruptcy Court does not have jurisdiction over Raul Sergio Cantu, M.D. or any involuntary case filed against him because he has not been a resident of the United States, nor this district for the greater portion of the preceding 180 days prior to the date of the Involuntary Petition, all as provided at §109(a).

[4] "The occasional judicial failure to distinguish sharply between the [12(b)(2) and 12(b)(5) motions] has not caused any difficulty, however, because the courts have been able to determine the merits of the real issue before them regardless of how the motion is designated and nothing appears to turn on the misdesignation." Id.

-7-

as a vehicle.  Such a "second bite at the apple" is both inequitable and procedurally barred.  *See* FED. R. CIV. P. 12(h)(1).

It could be urged that the court's denial of the Debtor's motion to dismiss of necessity constituted a tacit rejection of the Debtor's equally tacit challenge to sufficiency of process, notwithstanding its imprecision on this point. Nonetheless, in an abundance of caution, the court construes the Petitioning Creditors' current motion as (a) a motion for "reconsideration" (or clarification) of the court's oral pronouncement at the hearing on the motion to dismiss and in the alternative (b) a request, pursuant to Rule 1010, to authorize alternative service, just in case the court were to rule that service was not sufficient.  A motion for reconsideration does not require a further evidentiary hearing, because it merely asks the court to take a second look at the evidence already in the record. *See* FED.R.CIV.P. 59, 60(b); *Cf. Zukowski v. St. Lukes Home Care Program*, 326 F.3d 278, 282 n.3 (1st Cir. 2003) (a Rule 59(e) motion does not allow introduction of new evidence that should have been presented earlier). Even if the court has the discretion to take further evidence, the court declines to exercise that discretion. It is neither necessary nor appropriate to afford the Debtor a second bite at the apple to now present evidence that it should have presented at the original evidentiary hearing – especially in view of the fact that this is not the *Debtor's* motion.  *See Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996); FED.R.CIV.P. 12(h)(1).

There are procedural consequences when a court conducts an evidentiary hearing on a defendant's motion to dismiss pursuant to Rule 12(b)(5), as the Court has done here.  For one, the plaintiff has the burden of proof to show proper service by a preponderance of the evidence.  *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held.

When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence."); *Wright & Miller*, § 1351 (3d. ed. 2004) ("the plaintiff bears the ultimate burden of demonstrating that the court's personal jurisdiction over the defendant exists by a preponderance of the evidence . . . ."). If the plaintiff makes out a *prima facie* case, however, then that burden is satisfied, unless and until the defendant comes forward with evidence sufficient to rebut the evidence presented by the plaintiff. *Purdue*, 338 F.3d at 782. At that point, the burden of going forward with further evidence shifts back to the plaintiff. The burden of going forward with evidence can constantly shift with the quantum of evidence presented during the course of a hearing or trial. The burden of proof, however, remains with the plaintiff. *See Wright & Miller*, § 5122 (2d. ed. 2005). It is with these principles firmly in mind that we proceed to examine the evidence presented here.

## B. Adequacy of Service – Evaluation of the Evidence Presented

Bankruptcy Rule 1010 requires that a debtor in an involuntary case be served the petition and summons according to the method for service of summons and complaint set out in either Rule 7004(a) or 7004(b). FED. R. BANKR. P. 1010. Rule 7004(b) in turn permits service by first class mail either (1) "to the individual's dwelling house or usual place of abode" or (2) "to the place where the individual regularly conducts a business or profession." *See* FED. R. BANKR. P. 7004(b).

### 1. Did Petitioning Creditors Establish Mailing of Service

There is no dispute that service in this case was in fact mailed. Creditors have submitted affidavits to that effect, and an affidavit of service is prima facie evidence of proper service. *See Mountain Nat'l Bank v. Brackett (In re Brackett),* 243 B.R. 910, 914 (Bankr. N.D. Ga. 2000) (placing the burden of proving improper service on the party challenging a default judgment). The

mere denial of receipt by the party being served is insufficient to rebut this evidence. *Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006); *Brackett*, 243 B.R. at 914. Because the Petitioning Creditors have filed proof of mailing, and because the Debtor has not presented any controverting evidence, Petitioning Creditors have carried their burden as to the issue of mailing by a preponderance of the evidence.

### 2. Was Service Accomplished on a Qualifying Address Pursuant to Rule 7004(b)

There remains the issue whether any of the addresses to which Petitioning Creditors mailed the petition and summons qualify as either the Debtor's "dwelling house or usual place of abode" or "the place where the individual regularly conducts a business or profession." Either address will satisfy the requirement of the Rule. *See* FED.R.BANKR.P. 7004(b)(1). We examine the evidence with respect to each of these alternatives.

### a. Debtor Was Properly Served at His Dwelling House or Usual Place of Abode

A precise meaning of the phrase "dwelling house or usual place of abode" has eluded the courts. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963). Courts instead look at the facts of each particular case. *Id.* A firm definition is even more difficult to construct in these modern times because people are more mobile and often may have multiple homes. *See Wright & Miller*, §1096 at 521-22 (3d. ed. 2002) ("Indeed, because of today's environment of global travel, job mobility, and multiple residences, the meaning of the phrase has been blurred even further.").

In this case, Petitioning Creditors at the hearing submitted copies of the Debtor's still-valid Texas drivers license bearing the San Pedro Address. This is one of the addresses to which Petitioning Creditors had mailed service. The driver's license is some evidence that the San Pedro Address was, at the time of service, the Debtor's "dwelling house or usual place of abode." Texas

-10-

law states that "Original drivers license applications must be verified by the applicant before a person authorized to administer oaths,"[5] and "A licensee is required to notify the department of any change of name or address within 30 days and apply for a duplicate license when such change occurs."[6] Here, the Debtor, who was under a legal compulsion to notify the State of Texas of any change of address, has not in fact done so to date. That is probative that the San Pedro Address is still a "good address," the Debtor's driver's license disclosing to the world as it does that the address on the license is where the Debtor himself represents that he still lives. With the presentation of this evidence alone, the burden of going forward with controverting evidence shifted to the Debtor.

The Debtor's only evidence in rebuttal was the oral testimony of Debtor's nephew, Mr. Javier Cantu, of Monterey, Mexico. Mr. Cantu testified that the Debtor had been living in Monterey since August or September 2003. He also testified that the Debtor stayed for two or three months with Mr. Cantu's father in Monterey, and that the Debtor subsequently moved in with his girlfriend. Mr. Cantu also admitted, however, that he does not know where the girlfriend lives, and has never been there. He also stated that the Debtor does not practice medicine in Monterey, nor is the Debtor licensed to do so. Mr. Cantu further testified that the Debtor owns no car in Monterey, and that the Debtor has had to accept gifts of money from the nephew's father for the Debtor's support. Though the Debtor in his motion offered to prove that he has lived in Mexico for the last four years, the offer came to the court without a supporting affidavit. No documentary evidence was presented at the hearing on behalf of the Debtor, and, of course, the Debtor did not appear to testify.

---

[5] 37 TEX. ADMIN. CODE § 15.22.

[6] *Id.* § 15.36.

In rebuttal to this evidence, Petitioning Creditors presented the following evidence. First, Debtor's photo appears in the Bexar County Medical Society Official 2004 Membership Directory. This directory shows Dr. Cantu having a practice address in San Antonio, Texas as of the date of publication, casting some doubt on the nephew's statement that Dr. Cantu was living in Monterey after 2003. Second, and more convincing, is a copy of a pleading filed by the Debtor in the state court lawsuit that gave rise to the Petitioning Creditors' judgment. That pleading, styled "Respondent's Motion for a New Trial," requested relief from the Petitioning Creditors' state default judgment on the malpractice claim. This motion was filed *pro se*, and was mailed on January 24, 2005, in an envelope that bore both a San Antonio, Texas return address and a San Antonio, Texas postmark. One can reasonably infer that the Debtor, in January 2005, was not in Monterey, Mexico, but in San Antonio, Texas, where he deposited this *pro se* pleading into a San Antonio mailbox.

Two cases guide the court in evaluating this evidence. The first, *In re Xacur*, 219 B.R. 956 (Bankr. S.D. Tex. 1998), interprets "dwelling house" under Bankruptcy Rules 1010 and 7004(b). Xacur was a citizen of Mexico with a Mexican driver's license, Mexican voter registration card, and Mexican passport. *Id.* at 960. Nonetheless, the court held that the petitioning creditor's service of Xacur by mailing the petition and summons to Xacur's Houston, Texas condominium – used only infrequently – was adequate service. The court explained, "

> There must be a reasonable nexus between the defendant and the place where service is effected[;] however, in a highly mobile and affluent society, it is unrealistic to interpret rule 7004(b) so that the person to be served has only one dwelling house or usual place of abode at which process may be left. There is nothing startling in the conclusion that a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence."

*Id.* at 966-67. (citations and internal quotations omitted). Thus, despite Xacur's evidence of Mexican residence, the Houston condominium was still held to be one of Xacur's dwelling houses. In other

words, Xacur's actual residence in Mexico did not preclude the Houston condominium from also qualifying as a valid place of service – as *a* "dwelling place or usual place of abode."

In the second case, *Rosa v. Cantrell*, 705 F.2d 1208 (10th Cir. 1982), a United States Marshal delivered summons and complaint to the defendant's wife. Defendant asserted that his family's home was no longer his own abode and that service was therefore invalid. The court focused upon the fact that Defendant, who the court concluded was hiding from process servers until the applicable limitations period had run, presented no evidence that, at the time of service, defendant had *another* abode. *Id.* at 1213. The court wrote, "The existence of another abode has not been brought to anybody's attention in this case. This was service." *Id.* at 1214. *Rosa* demonstrates the skepticism likely to meet a party's protestations that an abode is no longer valid for service when that party presents no evidence of where that party lives now (especially when it appears that the party challenging service is also trying to evade it).[7]

*Rosa* and *Xacur* teach that, for purposes of Bankruptcy Rule 7004(b), a place shown by a plaintiff to have once been a valid "dwelling house or usual place of abode" does not cease to be a valid address for mailing of service unless the party contesting service establishes by evidence that he has in fact abandoned that address.[8] Mere denial that an address is correct, even in a sworn affidavit, is generally insufficient for the party challenging service to prevail. *See Warfield v. Byron*, 436 F.3d 551, 556 (5th Cir. 2006). On the evidence presented here, the Debtor has not established that he has abandoned the San Pedro address, or that he in fact has a new "usual place of abode."

---

[7] Of course, the court is not addressing the fact question whether Dr. Cantu is purposefully evading service in order to frustrate his judgment creditors.

[8] *Cf.* Conner v. Union Pac. R. Co., 219 F.2d 799, 802 (9th Cir. 1955) ("Generally, a condition shown to exist on a given day may sustain an inference as to identity of condition at a time backward or forward. But whether such evidence is reliable enough for use is usually for the sound discretion of the trial court.") (citation omitted).

The "Adverse Inference Rule" is also applicable here, and further strengthens the court's evaluation of the evidence on this point. Under the Adverse Inference Rule, if a party in possession of evidence that would strongly support his claim fails to produce that evidence, then the court is allowed to draw the inference that the strong evidence would have in fact *harmed* the party's contention. *See Interstate Circuit v. U.S.*, 306 U.S. 208, 226, 59 S.Ct. 467, 474 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. Silence then becomes evidence of the most convincing character.") (citations omitted); 2 J. WIGMORE, EVIDENCE § 285 (3d ed. 1940) . The treatise states:

> The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party. These inferences, to be sure, cannot fairly be made except upon certain conditions; and they are also always open to explanation by circumstances which make some other hypothesis a more natural one than the party's fear of exposure. But the propriety of such inference in general is not doubted.

*Id.*; *accord Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. N. L. R. B.,* 459 F.2d 1329, 1335 (D.C. Cir. 1972). By the same token, however, the Adverse Inference Rule is only applied when the party with the burden of proof has first introduced sufficient evidence to make his prima facie case. *W.F. Corbin & Co. v. U.S.*, 181 F. 296, 304 (6th Cir. 1910). As has already been demonstrated above, that has been done here.

Applying the foregoing teachings to the evidence before the court, the San Pedro Address qualifies as a "dwelling house or usual place of abode" for purposes of establishing that proper service was accomplished pursuant to Bankruptcy Rule 7004(b). The Petitioning Creditors have shown, via the driver's license records, that the San Pedro Address was once, and may still be, the

Debtor's abode. The Debtor has not updated his address on his license, as state law requires, further supporting the fair inference that the address is still the Debtor's abode. The Debtor submitted no documentary evidence that the San Pedro Address is not his place of abode, nor, significantly, has he submitted any credible evidence that he has taken up residence elsewhere. *See Rosa v. Cantrell*, *supra*. Debtor's only controverting evidence consisted of the oral testimony of his nephew, who acknowledged that he does not know Debtor's address, has never seen where the Debtor allegedly lives, does not know where Debtor's girlfriend's house is, and cannot explain how the Debtor supports himself in Mexico. In fact, some of the nephew's testimony was flatly contradicted by evidence that the Debtor mailed a *pro se* motion for new trial from a San Antonio postal collection site in early 2005, a time when the Debtor claims that he was living in Mexico. Debtor himself did not testify, either in person or by affidavit. On this evidence alone, under the standards set out in the case law discussed *supra*, the Petitioning Creditors sustained their burden that the San Pedro Address constitutes at least *a* dwelling house or place of abode.

The Adverse Inference Rule makes the Petitioning Creditors' case even stronger. Debtor introduced only weak evidence to contradict Petitioning Creditors' *prima facie* case, leaving out the obvious proof of a change of abode one would expect to receive in response, such as a copy of a residential lease, a new voter registration or copies of income tax returns showing a new address.[9] Applying the Adverse Inference Rule, the Court is justified in drawing the inference that the Debtor did not present such strong evidence because such evidence would have in fact been adverse to the Debtor's contention that he has changed his abode to Monterey, Mexico. The failure to produce even the first page of the Debtor's U.S. income tax return for 2004 or 2005 was especially telling.

---

[9] *See* Cook v. Tait, 265 U.S. 47, 44 S.Ct. 444 (1924) (holding that a US citizen living in Mexico is still subject to the US income tax).

A case demonstrating the kind of evidence that Debtor could have presented to avoid the impact of the Adverse Inference Rule is *CFTC v. Wall St. Underground, Inc.*, 221 F.R.D. 554 (D. Kan. 2004). There, an individual defendant filed a motion to set aside a default judgment, to quash service and to dismiss the case. *Id.* at 555. On the "quash service" aspect of his motion, the defendant offered several pieces of evidence to rebut the validity of service, which in that case had been accomplished by leaving process at the address shown on the defendant's driver's license. The rebuttal evidence consisted of (1) an affidavit from the person (a Ms. Williams) who accepted service, stating that defendant had never lived at that address, (2) copies of defendant's tax returns showing an address in Honduras, (3) copies of IRS Form 2255 showing proof of foreign earned income and listing the Honduras address, and (4) copies of United States Patents showing the Honduras address. *Id.* at 556. Relying especially upon Ms. William's affidavit, the court concluded that the Florida address could not be considered defendant's "dwelling house or usual place of abode," and so quashed service. *Id.* at 557.

*Underground* demonstrates the kind of evidence that a defendant would be expected to offer to show that the defendant's usual place of abode had changed. Debtor's evidence here, by comparison, is thin and unconvincing. Debtor offered only the testimony of his nephew, who has not seen Debtor's alleged new residence and does not even know its location. Debtor did not offer any documentation tending to show a new residence, such as copies of tax returns, copies of residential leases, or even copies of utility bills.

The Petitioning Creditors have thus shown, by a preponderance of the evidence, that the Debtor was properly served at his San Pedro address, an address which constitutes the Debtor's "dwelling house or usual place of abode."  *See* FED.R.BANKR.P. 7004(b)(1).

-16-

### b. Debtor Was Properly Served at His Place of Business

The alternative permissible place of service provided in Rule 7004(b)(1) is the place where the individual "regularly conducts a business or profession." FED.R.BANKR.P. 7004(b)(1). Few cases have discussed the interpretation of "place of business" as used in this rule. Some guidance is afforded by a decision of the Second Circuit, however. *See In re Martin-Trigona*, 763 F.2d 503 (2d Cir. 1985). In that case, the husband and wife debtors were respectively the President and Secretary of a Connecticut corporation. They were served *as individuals* by first class mail under Bankruptcy Rule 7004(b) at the address listed in the Connecticut Secretary of States's records for *the corporation*, where the debtors were held to be conducting "a business." The Second Circuit held the service valid based solely upon the proof of mailing and the Secretary of State's records. *Id.* at 505. The court explained, "failure either to collect corporate mail sent to the [registered] address or to change the address for service of process with the Secretary of State constitutes a willful disregard of legal process and a willful default." *Id.* at 505-06. Thus, "place of business" could, in the Second Circuit's view, include the place where the individuals conducted a business, albeit in a corporate capacity.

This is not to say that simply proving service by mail to an address listed in the Secretary of State's records is conclusive on the point. It does, however, demonstrate the kind of evidence that will be sufficient to make out a *prima facie* case that the target of service "conducts a business" at that address, for purposes of satisfying Rule 7004(b)(1). The party contesting service must then come forward with evidence to show that he does *not* in fact conduct a business at that address.

In this case, Petitioning Creditors put on evidence that the Broadway Address (to which service was mailed) is the address shown in the records of the Texas Secretary of State for two

entities, Tucan, L.L.C., a Texas Limited Liability Company, and Tucan Property Management, Inc., a Texas Corporation.  The records list "Raul S. Cantu" as President and Secretary, and Raul S. Cantu, Jr. and Richard Cantu as Vice Presidents of Tucan, L.L.C. The information in these records was last updated on April 19, 2006, and shows the "Entity Status" as "In existence." As for Tucan Property Management, "Raul S. Cantu" is listed as both its President and Secretary, and is also listed as its registered agent.[10] The Secretary of State's records also show that one "Raul S. Cantu, Jr." is a Vice President of the corporation. A corporation is obligated to file with the Secretary of State any change of registered agent or change of address of the registered agent. TEX. BUS. CORP. ACT, arts. 2.10 & 2.10-1 (West pamphl. ed. 2006). This is all probative evidence that the Debtor in fact conducts business at this address, and makes out the Petitioning Creditors' *prima facie* case for service on the "place of business" of the Debtor. *See In re Martin-Trigona*, 763 F.2d at 505.

The Debtor asserted in his motion to dismiss, and also argued at the hearing, that the service mailed to the Broadway Address was actually opened by the Debtor's son, Raul S. Cantu, Jr. The Debtor did not offer any evidence, however, so the assertion remains that – a mere assertion. Unsubstantiated assertions do not rebut a *prima facie* case.

It would not matter in any event.  Even if the Debtor *did* put on evidence that the Debtor's son opened up the mail that contained the summons and process, so what?[11] Bankruptcy Rule 7004(b) requires only that the process be mailed to the place where an individual regularly conducts his business; it says nothing about who opens the envelope. FED.R.BANKR.P. 7004(b). The

---

[10] Ironically, the registered agent is responsible for accepting service upon the corporation. TEX. BUS. CORP. ACT. art. 2.11 (Vernon Supp. 2006).

[11] A stylistic doff of the hat goes to Judge Frank Easterbrook, of the Seventh Circuit.  *See, e.g.*, Pratt Central Park Ltd. Partnership v. Dames & Moore, Inc., 60 F.3d 350, 355 (7th Cir. 1995) ("Well and good, but so what?").

allegation that the Debtor's son opened the mailing would be relevant only if it tended to show that the Broadway Address was not in fact where the Debtor regularly conducts his business. In point of fact, it is not probative on this question. The Texas Secretary of State's records clearly show *both* "Raul S. Cantu" and Raul S. Cantu, Jr." as different officers of the same businesses, indicating that *both* the Debtor *and* his son conduct business at that address. The assertion, even if proven, that the son opened the Debtor's mail therefore has no relevance to the question whether the Debtor himself *also* regularly conducts business at the Broadway Address. So, in addition to being unsupported by the evidence, the assertion is also legally irrelevant.

At the hearing, Debtor also argued that the Broadway Address is in fact the address of one John D. Herrick, an attorney who is said to have represented the Debtor during at least part of the Debtor's divorce, which became final on January 3, 2006. Debtor says that, because the Broadway Address was the address of Mr. Herrick, it could not have been the Debtor's "place of business." This argument too is unavailing. This is not a case of the Petitioning Creditors' having attempted the shortcut of trying to serve the Debtor by serving his former attorney. The Petitioning Creditors mailed service to Raul S. Cantu, not his attorney, at the very address that the Debtor himself represented (and still represents) to the State of Texas as the location of *Debtor*'s medical practice and other businesses. It was for the Debtor to explain, with evidence, why he might have used his former divorce attorney's address as his business address for either his medical practice or for one of his two companies. The evidentiary hearing was the time to give that evidence. He gave none.

True enough, the Debtor is a doctor.  But, just as *Xacur* held that a person may have more than one dwelling house, so it is also true that a person may have more than one business or profession. The rule, after all, says "*a* business or profession," implying the possibility of more than

one such business or profession. In addition to his medical practice, the debtor has conducted other businesses under the rubric of Tucan LLC and Tucan Property Management, Inc. *See In re Martin-Trigona*, *supra*. Suppose the Debtor had proven that he no longer practices medicine in San Antonio (and the Debtor presented very little competent evidence to support such a contention). Why would it matter? The Petitioning Creditors put on their *prima facie* that the Debtor also conducts *other* businesses in San Antonio, other than the practice of medicine, and that *those* businesses list the Broadway Address as their location. The Debtor did not offer any evidence to rebut that *prima facie* showing.

The Petitioning Creditors have thus met their burden of establishing that the Debtor regularly exercises "a business or profession" at the Broadway Address, to wit, acting as President and Secretary of Tucan, L.L.C. and Tucan Property Management, Inc. *See In re Martin-Trigona*, *supra*. Service was thus proper on this alternative basis, satisfying the requirements of Rule 7004(b)(1).

## Conclusion

Adequacy of service is a fact question decided by weighing the evidence before it. Dr. Cantu claims that service mailed to his home and to his business, at addresses he himself represented *under oath* to the State of Texas, is nonetheless defective. Yet, despite his ability to retain counsel and procure a family member from Monterey as a witness, Dr. Cantu was unable to produce the most simple documentary evidence to rebut the Petitioning Creditors' *prima facie* case. The Petitioning Creditors sustained their burden of proof with respect to service on the Debtor's "dwelling house or usual place of abode," as the *only evidence* that Debtor has left San Antonio is his nephew's oral testimony, which was undercut by the Debtor's own writing, and further undermined by the adverse inference properly drawn from the Debtor's failure to present 'strong evidence' to support his

contention that he has a place of abode elsewhere than in San Antonio, Texas. The Petitioning Creditors also sustained their burden with respect to adequacy of service on the Debtor at the place where the Debtor "practices a business or profession." Their task was made simpler by the Debtor's failure to offer *any* evidence to controvert. Thus, under either alternative permitted under Rule 7004(b)(1), the Petitioning Creditors' service of process was proper. They thus have no need for permission to further serve the Debtor via an alternative allowed under Rule 7004.

The court need not leap to the conclusion that Dr. Cantu, in an attempt to escape his judgment creditors, has gone into hiding as part of a scheme to place his assets out of reach. The court need only conclude, by a preponderance of the evidence, that at the time service was mailed, Dr. Cantu had a usual place of abode at the San Pedro Address and regularly conducted a business at the Broadway Address.

The court thus here DENIES the Debtor's motion to dismiss for insufficiency of service of process pursuant to Rule 12(b)(5). The court further rules that the Petitioning Creditors' motion for authorization to perfect service by an alternative means is MOOT.

An order consistent with this opinion shall be entered on the docket.

# # #